UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION


UNITED STATES OF AMERICA,    )    CASE NO:  5:10-CR-548-2
    )
        Plaintiff,    )      CRIMINAL
    )
   vs.    )    Laredo, Texas
    )
RUBEN DE LEON,    )   Friday, May 14, 2010
    )
       Defendant.    )  (11:46 a.m. to 12:07 p.m.)


FINAL PRETRIAL CONFERENCE / REARRAIGNMENT

BEFORE THE HONORABLE DIANA SALDANA,
UNITED STATES MAGISTRATE JUDGE


Appearances:        See next page

Case Manager:       Irene Sanchez

Interpreters:       Ana Koency / Francisco Vergara

Court Recorder:     Sylvia Gonzalez

Deputy U.S. Marshal:  Jacob Palombo

Transcribed by:     Exceptional Reporting Services, Inc.
                       P.O. Box 18668
                       Corpus Christi, TX 78480-8668
                       361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**


Plaintiff:                   ROBERT RAMIREZ, ESQ.
                             Assistant United States Attorney
                             P.O. Box 1179
                             Laredo, Texas 78042-1179

Defendant:                   OSCAR O. PENA, ESQ.
                             1720 Matamoros
                             Laredo, Texas 78040

U.S. Probation:              Patricia Albidrez

<u>**Laredo, Texas; Friday, May 14, 2010; 11:46 a.m.**</u>

**(Call to Order)**

**THE COURT:**  Mr. Pena, is he ready or is he going to waffle also?  Because I have a whole other group of people that I can take very quickly.

**MR. PENA:**  No, your Honor.  We're ready.  We've got the plea agreement, your Honor.

However, I think I need to say a couple of things.  Since yesterday, as your Honor knows, we got hung up on the factual basis because my client was saying that he did not take the cocaine on this occasion to Victor Perez who is the co-defendant.

So we got together with the agent, Walter Frisk (phonetic), who's present and with Robert Ramirez this morning.  And I think that we've figured out what the problem was.

My client -- this -- there were several trips, and my client -- can I bring him up here?

**(No audible response)**

And I invite Mr. Ramirez to correct anything that I say that's incorrect.  But my understanding is that there were several trips, airplane trips, where cocaine was delivered.  My client knew what was going on.  He had a financial interest in what was going on, and he knew the gentlemen in Cleveland I believe it was who were going to get delivery of the cocaine.  And my client was going to make money off of it.  And that he

1    actually went up there on at least one occasion in an airplane

2    to Cleveland.

3            On this occasion, though, he did not physically

4    deliver the cocaine to the co-defendant who then took it to the

5    airport.  Somebody else physically delivered to -- delivered it

6    to the co-defendant.  The theory of possession -- and we

7    tinkered with the idea of changing the plea to conspiracy --

8    but the theory of possession is that when the co-defendant

9    called my client and says:  "I'm relapsing; I'm using the

10   cocaine," my client tells him:  "Stay there; keep the cocaine

11   on you."  Then my client goes over there to take control and

12   possession of the cocaine because number one, he didn't want

13   the co-defendant using it all up or using a substantial amount

14   of it up; and number two, because the co-defendant, from his

15   point of view and what he believed was -- had -- was a loose

16   cannon, and he didn't want to lose the load because this guy

17   was high on drugs.

18           And so he did not physically deliver the cocaine to

19   the co-defendant but he went over there -- he took control of

20   it by telling him "Stay there; I'm going to go pick you up."

21   And that he physically went over there to get it.

22           We have tinkered a little bit with the plea

23   agreement, the factual basis, but I believe that that is the

24   theory that we're going forward on, your Honor.

25           **THE COURT:**  Well, Mr. -- you're Ruben DeLeon?  That's

1    10-CR-548.  Just get in front of this microphone (indicating).

2           Mr. DeLeon, I tried to take your plea yesterday.  I

3    thought I explained to you that it was either possession or

4    aiding and abetting the possession of the cocaine.  I thought I

5    had explained that, and you still wouldn't tell me that you had

6    helped in any way.  You kept talking about the -- you didn't

7    want life, and you kept talking about, you know, that this was

8    the only way you couldn't get life.  And so, you know, I can't

9    be dealing with that.  So you -- when we talk about the factual

10   basis, it's either possession or aiding and abetting the

11   possession.  And I said that yesterday but I think you probably

12   didn't hear me because all you kept thinking about was that you

13   were going to get life.

14          So are you ready to go forward?  I have a whole group

15   of people.  If you're going to waffle, I don't have time for

16   that.  I can take you up at 12:30 because I have a whole group

17   of people that are ready to plead guilty.

18          **THE DEFENDANT:**  Yes, I'm ready.

19          **THE COURT:**  Are you ready?

20          **THE DEFENDANT:**  I'm ready.

21          **THE COURT:**  It's count two then?

22          **MR. PENA:**  Yes, your Honor.  It's the possession

23   count.

24          **THE COURT:**  Mr. DeLeon, you're here on a -- an

25   indictment that's charging you with violating one of our drug

 1  laws.  It's my understanding you're going to enter a plea of

 2  guilty today.

 3          Before I start this process with you, I need to let

 4  you know that you have the right to have your case heard and a

 5  plea taken before a District Judge.  I'm a Magistrate Judge.  I

 6  cannot find you guilty, and I cannot sentence you.

 7          Irene, where's the consent?  And the plea agreement's

 8  right here.

 9          Stop.

10          And it's my understanding that you've already signed

11  a consent form to proceed in front of me here today.  Is that

12  your signature on the consent form?

13          **THE DEFENDANT:**  Yes, ma'am.

14          **THE COURT:**  Do you understand by signing that, you're

15  agreeing to go forward with your plea of guilty with me?

16          **THE DEFENDANT:**  Yes, ma'am.

17          **THE COURT:**  And that's what you want to do?

18          **THE DEFENDANT:**  Yes, ma'am.

19          **THE COURT:**  Let me explain the charge to you.

20          They're alleging that on February 19, 2010, in the

21  Southern District of Texas, that you knowingly and

22  intentionally possessed with the intent to distribute a

23  controlled substance or that you aided and abetted in the

24  possession of that controlled substance.  That it -- and that

25  it was, in fact, more than five kilograms of cocaine.

1          If you wanted to go to trial on the charge, the

2    government would have to show that you knew you were in

3    possession of the controlled substance.  That you exercised

4    some sort of control over it or intended to exercise some sort

5    of control over it or that you helped to do that.

6          That's the charge.  Do you understand count two?

7          **THE DEFENDANT:**  Yes, ma'am.

8          **THE COURT:**  How do you plead, guilty or not guilty?

9          **THE DEFENDANT:**  Guilty.

10         **THE COURT:**  And is that your signature on that plea

11   agreement?

12         **THE DEFENDANT:**  Yes, ma'am.

13         **THE COURT:**  Did you get a chance to review it?

14         **THE DEFENDANT:**  Yes, ma'am.

15         **THE COURT:**  And your attorney went over it with you?

16         **THE DEFENDANT:**  Yes.

17         **THE COURT:**  Let me have you raise your right hand.

18      **(Defendant sworn)**

19         **THE COURT:**  Thank you.  Lower your hand.

20         I'm going to explain to you what happens now.  You

21   should know all of this information from speaking to your

22   attorney.  And, in fact, everything that I'm going to go over

23   with you is contained in the plea agreement.  Stop me if you

24   have any questions but don't lie to me.  If you lie, that's a

25   separate offense called perjury.  And you can be prosecuted for

1    that.

2            Are you under the influence of any drugs, alcohol or

3    medicine?

4            THE DEFENDANT:  No, ma'am.

5            THE COURT:  In your life, have you ever had a history

6    of mental problems, psychiatric problems or brain damage?

7            THE DEFENDANT:  No, ma'am.

8            THE COURT:  Now, Mr. DeLeon, did you have enough time

9    to discuss this case with your attorney privately, to ask him

10   any questions you may have or get any advice you want to get

11   about the charge?

12           THE DEFENDANT:  Yes, I did.

13           THE COURT:  And did anybody force you or threaten you

14   to get you to plead guilty?

15           THE DEFENDANT:  No, ma'am.

16           THE COURT:  Are you pleading guilty freely and

17   voluntarily?

18           THE DEFENDANT:  Yes, ma'am.

19           THE COURT:  Is this your decision to do this?

20           THE DEFENDANT:  Yes, ma'am.

21           THE COURT:  And, Mr. Pena, you're satisfied that he

22   is competent?

23           MR. PENA:  Yes, I am.

24           THE COURT:  Let me go over the penalty with you,

25   Mr. DeLeon.  And like I explained yesterday -- and I don't have

1    them in front of me, the enhancements.

2         Like I explained to you yesterday, the government has

3    filed a notice of enhancement.  They actually filed two

4    enhancements.  Do you have them, Mr. Ramirez?

5         **MR. RAMIREZ:**  I do, your Honor.  Let me just grab

6    them real quick.

7         **THE COURT:**  I've got them.  They filed two

8    enhancements, and I went over them with you yesterday.  But I

9    want to make sure the record is clear today.  So it looks like

10   one of them was filed on May 9, 2010 -- actually, both of them

11   were filed but one of them is document number 25; one of them

12   is document number 26.

13        Document 25 talks about a conviction September 18,

14   2003, in Harris County, Texas.  It was a felony drug offense of

15   possession with the intent to deliver cocaine of at least 400

16   grams.

17        Document number 26 talks about a federal conviction

18   here in Federal Court in Laredo, Texas.  That was February 20,

19   2003, and that was possession with the intent to distribute

20   more than a hundred kilograms of marijuana.

21        So the government, as part of this agreement, they

22   are moving to or they're going to ask the judge to withdraw the

23   first information of prior conviction referred to as docket

24   number 25 prior to sentencing.  So they're going to ask the

25   judge or they're going to file a formal motion moving to

1   withdraw document number 25 in which case we're left with

2   document number 26 which is a second enhancement, second prior

3   conviction of enhancement.

4           So because of that, you are now facing a minimum

5   mandatory sentence of 20 years in prison up to life.  So you

6   have to get 20 years in prison up to life in prison.  Your

7   period of supervised release is at least 10 years.  They can

8   supervise you up to life if they want to but they have to do so

9   for at least 10 years.  Your fine is up to $8 million.  There's

10  a $100 special assessment.  That's what you're facing.  You

11  have to get 20 years in prison up to life in prison; your

12  supervised release is at least 10 years -- I'll explain what

13  that means in a minute -- fine up to $8 million; $100 special

14  assessment.

15          Now the prosecutor went ahead and put the information

16  in here in this plea agreement for the penalty as if they had

17  kept both enhancements.  If they had kept both enhancements,

18  you would be facing a mandatory sentence of life in prison.

19  Life in prison.  You would have to get life in prison without

20  release, a fine of $8 million, a period of supervised release

21  of at least 10 years and a $100 special assessment.  So they

22  put in both penalties.  But when I go over the agreement with

23  you, it says in there that they're going to move to withdraw

24  one of those enhancements.  So you have to get 20 years up to

25  life in prison.

 1              Do you understand?

 2          **THE DEFENDANT:**  Yes, ma'am.

 3          **THE COURT:**  Let me explain to you this term of

 4    supervised release, Mr. DeLeon.  And you know what this means.

 5    Once you finish serving your sentence in this case, you're

 6    going to get supervised by a federal probation officer.

 7    They're there to help you.  If you ever need any type of

 8    counseling:  drug counseling, mental health counseling, job

 9    counseling.  But they have some requirements.  For example, you

10    have to report to them every month.  You can't possess a

11    dangerous weapon.  You cannot possess a firearm.  Most

12    importantly, you cannot break the law again.  Because if you do

13    during this time that you're being supervised, that is

14    considered a violation of the supervised release; and the judge

15    can send you back to prison in this case even though you would

16    have already finished serving the original part of your

17    sentence.  That's what that term of supervised release means to

18    you, Mr. DeLeon.

19              Do you understand?

20          **THE DEFENDANT:**  Yes, ma'am.

21          **THE COURT:**  And I think I had established you are a

22    U.S. citizen?

23          **THE DEFENDANT:**  Yes, ma'am.

24          **THE COURT:**  Okay.  So is that the way you understood

25    the penalty?

1          **THE DEFENDANT:**  Yes, ma'am.

2          **THE COURT:**  And you understand the charge?

3          **THE DEFENDANT:**  Yes.

4          **THE COURT:**  And, Mr. Pena, you're satisfied he

5 understands the charge and the consequences of pleading guilty?

6          **MR. PENA:**  Yes.

7          **THE COURT:**  And you are satisfied he's competent?

8          **MR. PENA:**  I am.

9          **THE COURT:**  Okay.  Let me go over this plea agreement

10 with you now, Mr. DeLeon.

11          It looks like in exchange for you pleading guilty to

12 count two, the government's going to move to dismiss count one

13 at the time of your sentencing.

14          They're also agreeing not to oppose your request for

15 a two-level downward adjustment on that sentencing table that's

16 there in front of you for accepting responsibility.  They're

17 saying if your score on the table is 16 or higher, they're

18 going to ask the judge to give you one more level off for

19 accepting responsibility.

20          And they're also going to move to withdraw docket

21 number 25, which is the first information of prior conviction

22 filed on May 9, 2010.  They're going to move to withdraw it

23 prior to your sentencing.  Those are the recommendations.

24          As part of your agreement, you give up your right to

25 appeal the sentence.  You also cannot complain about the case:

13

1    your plea, your conviction, your sentence, your detention.

2    You're giving that up as part of this agreement.

3              Is that the way you understood what was written in

4    the agreement?

5              **THE DEFENDANT:**  Yes, ma'am.

6              **THE COURT:**  Do you understand you're giving up your

7    right to appeal?

8              **THE DEFENDANT:**  Yes.

9              **THE COURT:**  Do you understand you cannot complain

10   about the case?  You cannot complain about the sentence?

11   That's part of the agreement.  Do you understand?

12             **THE DEFENDANT:**  Yes.  Yes, I do.

13             **THE COURT:**  Now, Mr. DeLeon, this agreement that you

14   signed is an agreement between you, your attorney and the

15   government attorney.  It doesn't bind the sentencing judge.

16   What does that mean?  It means the judge doesn't have to go

17   along with the recommendations if he doesn't want to.  He tries

18   very hard to go along with them but he's not required to.  And

19   if he doesn't go along with the recommendations, you still have

20   to accept the sentence that he gives you.  You cannot withdraw

21   the plea of guilty and ask me for a trial even if the judge

22   doesn't go along with the recommendations in the agreement.

23             Do you understand?

24             **THE DEFENDANT:**  Yes, I do.

25             **THE COURT:**  Now right now we don't know what your

1  score on the table in front of you -- we don't know what your

2  guideline score is going to be.  We won't know that until I ask

3  a probation officer to write a report about your life.  They're

4  going to go over your family history, your work history.

5  They're going to check to see if you have a criminal record in

6  the U.S.  And if you do, they're going to put it in the report.

7  They're also going to talk about the case.

8          Once they're done doing all of that, they're going to

9  come up with a score on the table that's there in front of you.

10  I know you have seen the table before.  I know Mr. Pena already

11  went over it with you.  What you have to understand, though, is

12  that sometimes the probation office, they recommend a higher

13  score.  Sometimes they recommend more time than you thought

14  they were going to recommend.

15          If that happens, you cannot withdraw the plea of

16  guilty and ask me for a trial.  You have to stay with the plea

17  of guilty and accept the sentence even if the score is

18  different than what you thought it was going to be or even if

19  the score is different than what Mr. Pena estimated your score

20  was going to be.

21          Mr. DeLeon, do you understand that?

22          **THE DEFENDANT:**  Yes, ma'am.

23          **THE COURT:**  When they finish writing that report,

24  they're going to send it Mr. Pena.  He'll go over it with you.

25  Make sure you tell him if you think there's any mistakes in the

1    report because he gets a chance to file objections to it.  The

2    government attorney can file objections also.

3            When all of that is done, Judge Kazen is going to set

4    you up for your sentencing hearing.  At your hearing, he can

5    move from your score.  I'm holding up the table again.  This is

6    an advisory table.  But whatever your score is, the Judge has

7    the ability to move upward on the table.  That would be a more

8    severe sentence than the recommended score.  But he can also

9    move downward on the table.  That would be a less severe

10   sentence than the recommended score.  But again, whatever the

11   Judge decides to do; wherever he decides to go on this advisory

12   table, you have to accept the sentence.  You cannot withdraw

13   the plea of guilty and ask me for a trial even if you don't

14   like where the Judge ends up on the sentencing table.

15           Do you understand that?

16           **THE DEFENDANT:**  Yes, I do, ma'am.

17           **THE COURT:**  And then, Mr. DeLeon, like I told you, he

18   can move downward but he has to stop at that 20-year minimum

19   mandatory sentence because he's required to impose that

20   sentence.  So they can move downward but he has to stop at that

21   20-year sentence.

22           Do you understand?

23           **THE DEFENDANT:**  Yes, I do.

24           **THE COURT:**  Well, Mr. DeLeon, and then you really do

25   have to accept whatever sentence he gives you here because

1    you're giving up your right to appeal.  You're giving that up

2    as part of the agreement.

3              Do you understand that?

4              **THE DEFENDANT:**  Yes, ma'am.

5              **THE COURT:**  Mr. DeLeon, do you have any questions so

6    far about what I've explained?

7              **THE DEFENDANT:**  No, ma'am.

8              **THE COURT:**  So you -- let me summarize.  You have to

9    get 20 years up to life in prison; the fine is up to $8

10   million; a period of supervised release at least 10 years; $100

11   special assessment.

12             Are you understanding?

13             **THE DEFENDANT:**  Yes, ma'am.

14             **THE COURT:**  Okay.  So, Mr. DeLeon, I have now

15   finished explaining to you your plea agreement.  Is that the

16   way you understood the agreement the way I've explained it?

17             **THE DEFENDANT:**  Yes, ma'am.

18             **THE COURT:**  Did anybody make you any other

19   promises --

20             **THE DEFENDANT:**  No, ma'am.

21             **THE COURT:**  -- other than what I told you is written

22   in the agreement to get you to plead guilty?

23             **THE DEFENDANT:**  No.

24             **THE COURT:**  Let me talk to you about your rights.

25   You have the right to plead not guilty and ask for a trial.

1    You would be presumed innocent.  The government would have to

2    prove your guilt beyond a reasonable doubt.  You would have the

3    right to choose between a bench trial in front of a judge or

4    you could ask for a jury trial.  More than likely you would

5    want a jury trial so the government would have to prove your

6    guilt to 12 people instead of just one.

7         You would have the right to have an attorney there to

8    represent you throughout the process.  If you got into an

9    argument with your attorney, I could give you another attorney.

10   You would have 30 days to prepare for that trial.  You could

11   testify at that trial or you could remain silent.  Whatever you

12   decided to do could not be used against you.  You could help

13   your attorney cross examine witnesses.  You could call

14   witnesses on your own behalf.  You could even ask the court to

15   issue subpoenas that would make witnesses come in and testify

16   in your defense.

17        But a guilty plea ends all of that.  By pleading

18   guilty today, there's not going to be a trial.  There won't be

19   any witnesses.  The government doesn't have to prove anything

20   to anybody.  We are going to take your word for it that you are

21   guilty.  And except for your sentence, this case is going to be

22   over in the next couple of minutes.

23        **THE DEFENDANT:**  Okay.

24        **THE COURT:**  Those are your rights:  that you don't

25   have to plead guilty today, you can ask for a trial.

1          Do you understand those rights?

2          **THE DEFENDANT:**  I do, yes.

3          **THE COURT:**  Do you understand that if you plead

4    guilty today, you give up your right to a trial?

5          **THE DEFENDANT:**  Yes, I do.

6          **THE COURT:**  Do you understand that?

7          **THE DEFENDANT:**  Yes.

8          **THE COURT:**  And that's what you want to do?

9          **THE DEFENDANT:**  Yes.

10         **THE COURT:**  Okay.  Let me summarize for you what we

11   went over today.  The charge is knowingly and intentionally

12   possessing with the intent to distribute more than five

13   kilograms of cocaine.  Because of that and because of the

14   enhancement, you have that minimum mandatory sentence of 20

15   years up to life in prison.  I've gone over that table with

16   you.  I've gone over your right to go to trial.  I went over

17   the plea agreement with you where you're giving up your right

18   to appeal.  And then, Mr. DeLeon, I also told you before:

19   before you are sentenced, the judge is going to ask you:  "Is

20   this conviction valid?  Were you pardoned by the President?

21   Are you, in fact, Ruben DeLeon?"  He or she is going to go over

22   all of that with you before they impose that enhancement.  But

23   that's why I have to go over it with you because it changes

24   your penalty.

25         Do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And you've understood everything I've

3    explained?

4          THE DEFENDANT:  Yes.  Yes.

5          THE COURT:  Do you have any questions?

6          THE DEFENDANT:  No, ma'am.  No.

7          THE COURT:  Do you still want to plead guilty?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And tell me again how old are you?

10          THE DEFENDANT:  Thirty-four.

11          THE COURT:  And I can't remember, you were living

12    where before you got arrested?  Here in Laredo?

13          THE DEFENDANT:  In Laredo, yes.

14          THE COURT:  Okay.  And how far did you get in school?

15          THE DEFENDANT:  I finished school.

16          THE COURT:  Okay.  And you were working before you

17    got arrested?

18          THE DEFENDANT:  Yes.

19          THE COURT:  You said communication?

20       (**Voices overlap**)

21          THE DEFENDANT:  Telecommunications (phonetic), yes.

22          THE COURT:  Okay.  And are you married?

23          THE DEFENDANT:  Yes.

24          THE COURT:  With children?

25          THE DEFENDANT:  Yes.

1           **THE COURT:**  I think you said two kids in --

2           **THE DEFENDANT:**  I got two and then --

3           **THE COURT:**  -- in Florida?

4           **THE DEFENDANT:**  Yes, two in Florida and then one

5    here.  It's my stepson.

6           **THE COURT:**  Okay.  Well, let me read you your factual

7    basis.  This is part of your plea agreement, Mr. DeLeon.  And I

8    talked about this yesterday so I'm just going to summarize it.

9           It's February 19, 2010, 10:30 in the morning.

10   There's an aircraft that comes into Laredo.  Your co-defendant,

11   Victor Perez, is the passenger on that aircraft.  They end up

12   finding I believe it was 13 kilograms -- 13.3 kilograms of

13   cocaine in Perez's suitcase.  He admitted that he'd been doing

14   this, transporting cocaine over to Cleveland, Ohio, returning

15   with about $300,000 each time.  That he would get paid about

16   $500 per kilogram to take the cocaine to Cleveland, and that he

17   was introduced by another man to you, Ruben DeLeon.  And he

18   also admitted that it was DeLeon who provided Perez with the

19   cocaine each time including on this latest occasion which

20   you're telling me is not true but that's okay.  And it was to

21   DeLeon that Perez gave the currency once Perez returned from

22   Cleveland with the cash.  Perez also had $1,300 on his person

23   which was seized.  And he said he hadn't been paid for the last

24   three trips and that the money he had was given to him by

25   DeLeon, this $1,300.

1          So then Perez made some calls.  He called you

2     Mr. DeLeon.  He told you he was relapsing; he was going to

3     start using the cocaine.  So you came over to the area to pick

4     him up in the Chevrolet Silverado pickup truck.  Well, I guess

5     to pick him up and pick up the cocaine.

6          They advised you -- they arrested you, and they

7     advised you of your rights.  You waived them.  You admitted

8     that over the last two to three months you had previously

9     delivered cocaine to Perez; and that Mr. Perez was to take it

10     to two black males who were brothers in Cleveland, Ohio.  And

11     then that you admitted that each time the cocaine was taken to

12     Cleveland, it was by airplane.  And that on this occasion, you

13     had received this call from Perez saying that he was going to

14     start using the cocaine and for you to go pick him up.  And

15     that you admitted that you were planning on returning the

16     cocaine to the person who gave it to you.  And that you were

17     paid between three to $4,000 each time you delivered the

18     cocaine to Mr. Perez.

19          And then that -- I guess that DeLeon admitted that

20     you -- that Mr. Perez would fly the cocaine to Cleveland and

21     then that the money would be brought back to Laredo.  And that

22     he had delivered the money to you previously, and that you knew

23     that Perez had cocaine with him when you were coming to pick

24     him up.

25          And then they put in here that you reserve the right

1  to argue the extent of relevant conduct.

2          So, do you have any corrections to what I read?

3          **THE DEFENDANT:**  No, ma'am.

4          **THE COURT:**  And, Mr. DeLeon, I guess on other

5  occasions you had either delivered or caused to be delivered

6  cocaine to your co-defendant, Mr. Perez?

7          **THE DEFENDANT:**  Yes, ma'am.

8          **THE COURT:**  And you knew that it was cocaine?

9          **THE DEFENDANT:**  Yes, ma'am.

10          **THE COURT:**  And you were getting paid for helping out

11  with this?

12          **THE DEFENDANT:**  Yes.

13          **THE COURT:**  And on this occasion, you were going over

14  there to pick up Mr. Perez and the cocaine?

15          **THE DEFENDANT:**  Yes, ma'am.

16          **THE COURT:**  And I guess if you had taken possession

17  of it, you were just going to take it back to somebody else?

18          **THE DEFENDANT:**  Yes, ma'am.

19          **THE COURT:**  Okay, Mr. DeLeon, I'll accept the plea.

20  I'll issue a report and recommendation to Judge Kazen that he

21  find you guilty and that you be sentenced accordingly.

22          I will order a presentence report for you.  It is due

23  on June 21, 2010.  Hopefully, it will be done quickly since you

24  have one already.

25          Do you have any questions for me?

23

1          **THE DEFENDANT:**  No, ma'am.

2          **THE COURT:**  Anything on Rule 11?

3          **MR. PENA:**  No, your Honor.

4          **THE COURT:**  Okay.  Thank you.  You're remanded.

5      **(This proceeding was adjourned at 12:07 p.m.)**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    <u>October 11, 2011</u>

           **Signed**                                        **Dated**



                    *TONI HUDSON, TRANSCRIBER*